

**FILED**

FEB -1 2019

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____
          DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| STEPHEN SPARKS | § § § | |
| vs. | § | CIVIL ACTION NO. |
| 3M COMPANY | § § | JURY REQUESTED |



### COMPLAINT AND JURY DEMAND

Stephen Sparks ("Plaintiff") files this, his Original Complaint, complaining of Defendant 3M Company, and in support thereof would respectfully show the Court the following:

### I.

### PARTIES

1. Plaintiff Stephen Sparks is an individual residing in the city of New Braunfels in the State of Texas.

2. Defendant 3M Company is a corporation licensed under the laws of the State of Delaware with its principal place of business located at 3M Center, Bldg. 224-5N-40, St. Paul, Minnesota 55144. Defendant 3M Company is registered to transact business in Texas and may be served with process on its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service, located at 211 E. 7th Street Suite 620, Austin, Texas 78701.

### II.

### SUBJECT MATTER JURISDICTION

3. Plaintiff Stephen Sparks is and was a resident of the State of Texas at all times relevant to this case.

4. Defendant 3M Company ("3M") is organized under the laws of Delaware and has its principal place of business in Minnesota.

5.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because complete diversity of citizenship exists between the parties and the amount in controversy is greater than $75,000.

## III.

## PERSONAL JURISDICTION

6.      Defendant 3M Company designed, manufactured and sold or otherwise placed dual-ended Combat Arms™ earplugs into the stream of commerce, including transactions with and distribution to United States Military bases and servicemembers located in the Western District of Texas. Defendant knew at all times during the design, manufacture and sale of the dual-ended Combat Arms™ earplugs that the products in question would travel among and through each and every state, including Texas, and Defendant should have reasonably anticipated the need to answer suit arising out of the manufacture, design, and sale of these dual-ended Combat Arms™ earplugs in Texas. Defendant's contacts with the State of Texas are systematic, ongoing, and sufficient to support the proper exercise of personal jurisdiction over defendant.

7.      Additionally, and in the alternative, Defendant 3M purposefully availed itself to business dealings in the State of Texas and could reasonably expect to respond to complaints therein. Defendant's purposeful availment of the benefit and protection of the laws of Texas is sufficient to support proper exercise of personal jurisdiction over Defendant.

## IV.

## VENUE

8.      Venue is proper in the Western District of Texas, San Antonio Division, because it is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(b)(2).

V.

## FACTS

9. Plaintiff, Stephen Sparks, is an Air Force combat veteran. Plaintiff was stationed at Randolph Air Force Base located at Universal City, Texas. Plaintiff was also deployed overseas in Saudi Arabia in 1996, 1998 and 2006. Plaintiff was deployed overseas in the United Arab Emirates in 2000, 2004, 2005, 2008 and 2009.

10. While serving at Randolph Air Force Base and overseas, Plaintiff was issued and used dual-ended Combat ArmsTM earplugs, designed, manufactured, marketed and sold by Defendant 3M Company. As a result of the use of these defective earplugs, including in the Western District of Texas, during combat and training, Mr. Sparks suffers daily from tinnitus, hearing loss, and other injuries all to his damage.

11. In July 2018, Defendant 3M agreed to pay $9.1 million to resolve allegations that it supplied the United States with defective dual-ended Combat ArmsTM earplugs. *See United States of America ex rel. Moldex-Metric, Inc. v. 3M Company*; In the United States District Court for the District of South Carolina, Columbia Division; Case No. 3:16-1533-MBS. In that case, the United States alleged that 3M, and its predecessor, Aearo Technologies, Inc., knew the dual-ended Combat ArmsTM earplugs were too short for proper insertion into users' ears and that the earplugs could loosen imperceptibly and therefore did not perform well for certain individuals. The United States further alleged that 3M did not disclose this design defect to the military. The petition in that case is attached at Exhibit A and is incorporated by reference herein.

12. Defendant 3M's dual-ended Combat ArmsTM earplugs, which are non-linear, or selective attenuation, earplugs, were designed to provide soldiers with a single set of earplugs that offer them two options for hearing attenuation depending upon how the plugs are worn. If worn in the "closed"

or "blocked" position, the earplugs are supposed to block sound like traditional earplugs. If worn in the "open" or "unblocked" position, the earplugs are supposed to block, or at least significantly reduce, loud impulse sounds of battlefield explosions, while still allowing the wearer to hear quieter noises such as commands spoken by fellow soldiers and approaching enemy combatants. These earplugs were originally created by a company called Aero Technologies ("Aearo"). 3M acquired Aearo in 2008 (and thus any liability associated with its past conduct) and hired the employees at Aearo that developed and tested the defective earplugs. Upon information and belief, these 3M employees were aware of the defects as early as 2000, several years before 3M/Aearo became the exclusive provider of the earplugs to the military.

13.     As known to 3M/Aearo at the time it received the exclusive contract to supply earplugs to the military between 2003 and 2012, these earplugs have hidden dangerous defects that can cause them to loosen in the wearer's ear, imperceptibly to the wearer and even trained audiologists visually observing a wearer, thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the earplug while the user and/or audiologist incorrectly believes that the earplug is working as intended. Because the stem of the dual-ended earplug is too short, it is difficult to insert the plug deeply into some wearer's ear canals and obtain a proper fit. Specifically, when the earplug is inserted into the ear according to standard fitting instructions, the basal edge of the third flange of the non-inserted end of the earplug is prone to press against some wearers' ear canals and fold back to its original shape, thereby loosening the seal in their ear canals. Because the earplugs are symmetrical, the defect has the same effect when either end is inserted. In either scenario, the effect is that the earplug may not maintain a tight seal in some wearers' ear canals such that dangerous sounds can bypass the plug altogether thereby posing serious risk to the wearer's hearing unbeknownst to them.

14. Upon information and belief, these hidden dangerous design defects were known to Aearo in 2000 (and later 3M) when it completed testing of the dual-ended Combat ArmsTM earplugs.

15. Despite this knowledge, in 2003, Aearo submitted a bid in response to the military's Request for Proposal to supply large quantities of these earplugs and entered into a contract pursuant to which it became the exclusive supplier to the military of what were defective earplugs.

16. When Defendant Aearo/3M Company initially tested the dual-ended Combat ArmsTM earplugs, before becoming the exclusive supplier of military earplugs, the test subjects were instructed to manipulate the earplugs due to the short stem so that it would achieve a satisfactory noise reduction rating. However, these same instructions to manipulate the dual-ended Combat ArmsTM earplugs in this manner were never provided to end users of the earplugs. Because of this, Plaintiff and other users of the dual-ended Combat ArmsTM earplugs only used the earplugs according to the instructions provided by Defendant 3M Company, which specifically did not instruct them to manipulate the earplugs to achieve a proper fit. As a result of not being properly warned or instructed as to how to wear the dual-ended Combat ArmsTM earplugs, Plaintiff suffered damages.

17. Further, the dual-ended Combat ArmsTM earplugs manufactured by Defendant 3M Company deviated from the specifications promulgated by the U.S. Military, the American National Standards Institute, and the Environmental Protection Agency in a manner that rendered them unreasonably dangerous. Specifically, the U.S. Military's request for proposal issued to Defendant 3M Company requires that "[t]he ear plugs shall be free from all defects that detract from their appearance or impair their serviceability." The dual-ended Combat ArmsTM earplugs, as manufactured, deviated from this specification in that, when they left control of Defendant, the dual-ended Combat ArmsTM earplugs were difficult for users to insert the plug deeply into their ear canals and obtain a proper fit. The defective manufacture of the dual-ended Combat ArmsTM

earplugs and their failure to conform with the required specifications directly and proximately caused Plaintiff's injuries.

## VI.

## CLAIMS AGAINST DEFENDANT 3M COMPANY

### A. PRODUCTS LIABILITY—DESIGN DEFECT

18. The dual-ended Combat ArmsTM earplugs at issue were originally designed, manufactured, and sold by Defendant 3M Company. At the time the dual-ended Combat ArmsTM earplugs in question were sold, Defendant was in the business of designing, manufacturing, selling, and/or otherwise placing dual-ended Combat ArmsTM earplugs, such as the ones in question, in the stream of commerce.

19. At the time the dual-ended Combat ArmsTM earplugs in question were designed, manufactured and sold by Defendant, they were defective in design and unreasonably dangerous. The defective and unreasonably dangerous condition of the dual-ended Combat ArmsTM earplugs in question were a direct, proximate and producing cause of the injuries to Plaintiff for which the Plaintiff seeks damages.

20. The dual-ended Combat ArmsTM earplugs reached Plaintiff in the condition expected and intended by Defendant.

21. Plaintiff used the dual-ended Combat ArmsTM earplugs for their intended and foreseeable purpose.

22. The defects regarding the dual-ended Combat ArmsTM earplugs include but are not limited to the stem of the dual-ended earplug being too short, so that it is difficult for users to insert the plug deeply into their ear canals and obtain a proper fit.

23. Safer alternative designs existed other than the one used, which were economically and technologically feasible at the time of the design and manufacture of the of the subject dual-ended Combat ArmsTM and would have prevented or significantly reduced the risk of accident and/or injury in question without substantially impairing the utility of the dual-ended Combat ArmsTM earplugs.

24. The dual-ended Combat ArmsTM earplugs were defectively designed because the stem of the dual-ended earplugs was too short, so that it is difficult for users to insert the plug deeply into their ear canals and obtain a proper fit. The inability to obtain a proper fit while using the dual-ended Combat ArmsTM earplugs was the producing cause of the Plaintiff's injuries. Specifically, Defendant could have designed the dual-ended Combat ArmsTM earplugs with a longer stem so that it would allow users to insert the plug deeper into their ear canals and obtain a proper fit.

25. Each alternative design for the above identified defects was available in the market and was technologically and economically feasible at the time the dual-ended Combat ArmsTM earplugs were manufactured and would not have impaired the utility of the dual-ended Combat ArmsTM earplugs.

26. Further, at the time the dual-ended Combat ArmsTM earplugs in question were sold, the defective design caused the product to unexpectedly fail to function in a manner reasonably expected by an ordinary consumer. The defective and unreasonably dangerous design of the dual-ended Combat ArmsTM earplugs were a producing cause of Plaintiff's injuries.

27. At the time of the incident made the basis of this lawsuit, the dual-ended Combat ArmsTM earplugs were in the same or substantially similar condition as they were at the time they left Defendant's control and were placed into the stream of commerce. Any alterations to the dual-ended Combat ArmsTM earplugs were made by a dealer and/or agent of Defendant.

### B. PRODUCTS LIABILITY—MANUFACTURING DEFECT

28.  The dual-ended Combat ArmsTM earplugs at issue were originally designed, manufactured, and sold by Defendant. At the time the dual-ended Combat ArmsTM earplugs in question were sold, Defendant was in the business of designing, manufacturing, selling, and/or otherwise placing dual-ended Combat ArmsTM earplugs, such as the ones in question, in the stream of commerce.

29.  The dual-ended Combat ArmsTM earplugs reached Plaintiff in the condition expected and intended by Defendant.

30.  Plaintiff used the dual-ended Combat ArmsTM earplugs for their intended and foreseeable purpose.

31.  When they left control of Defendant, defects in the manufacture of the dual-ended Combat ArmsTM earplugs rendered them defective and unreasonably dangerous in that the dual-ended Combat ArmsTM earplugs were difficult for users to insert the plug deeply into their ear canals and obtain a proper fit due. In particular, the stem of the dual-ended Combat ArmsTM earplugs was too short, so that it is difficult for users to insert the plug deeply into their ear canals and obtain a proper fit. The defective manufacture of the dual-ended Combat ArmsTM earplugs directly and proximately caused Plaintiff's injuries.

### C. PRODUCTS LIABILITY—MARKETING DEFECT/FAILURE TO WARN

32.  Defendant failed to give adequate and proper warnings and failed to provide proper and adequate instructions regarding the dangers of the dual-ended Combat ArmsTM earplugs which rendered the product defective and unreasonably dangerous and was a producing cause of Plaintiff's injuries and damages. Specifically, Defendant failed to warn potential and actual users of the dangers and risk of the defects. Further, Defendant failed to provide adequate instructions to users regarding proper use of the dual-ended Combat ArmsTM earplugs and/or instructions

which might have mitigated the hidden defect of the ear plugs. Defendant's failure to warn was a proximate cause of Plaintiff's injuries and damages.

### D. STRICT LIABILITY

33. The dual-ended Combat Arms™ earplugs that injured Plaintiff were originally designed, manufactured, and sold by Defendant. At the time the dual-ended Combat Arms™ earplugs in question were sold, Defendant was in the business of designing, manufacturing, testing, assembling, monitoring, selling, and/or otherwise placing dual-ended Combat Arms™ earplugs, including the dual-ended Combat Arms™ earplugs at issue and their defective condition, which was the proximate cause of Plaintiff's injuries.

34. The dual-ended Combat Arms™ earplugs reached Plaintiff in the condition expected and intended by Defendant.

35. Plaintiff used the dual-ended Combat Arms™ earplugs for their intended and foreseeable purpose.

36. Due to the design and manufacture of the dual-ended Combat Arms™ earplugs, the dual-ended Combat Arms™ earplugs were not reasonably effective at reducing noise. The failure to appropriately design and manufacture the dual-ended Combat Arms™ earplugs which contributed to the ineffectiveness of the dual-ended Combat Arms™ earplugs in reducing noise was the direct and proximate cause of Plaintiff's injuries. Accordingly, Defendant should be held strictly liable.

37. Defendant placed the defective dual-ended Combat Arms™ earplugs into the stream of commerce and expected or could reasonably foresee the use of said dual-ended Combat Arms™ earplugs by individuals, such as Plaintiff, in the condition in which the dual-ended Combat Arms™ earplugs were designed, manufactured and sold.

38. The dual-ended Combat ArmsTM earplugs at issue were designed, manufactured and assembled so that the defective condition was undiscoverable by the ordinary reasonable user at the time of use of the dual-ended Combat ArmsTM earplugs.

39. The defective condition of the subject dual-ended Combat ArmsTM earplugs was not observable by Plaintiff who relied upon Defendant to design, test, manufacture, sell and deliver the subject dual-ended Combat ArmsTM earplugs in a condition fit for use for the purposes intended.

40. As a direct and proximate result of the failure of Defendant to properly design, test, manufacture, sell and deliver the dual-ended Combat ArmsTM earplugs at issue, Plaintiff has suffered severe personal injuries.

### E. Negligence

41. Defendant committed acts of omission and commission, which collectively and severally constituted negligence, and that negligence proximately caused Plaintiff's injuries.

42. Defendant's acts or omissions constituting negligence include:

   a. Failing to properly design the dual-ended Combat ArmsTM earplugs;

   b. Failing to properly manufacture the dual-ended Combat ArmsTM earplugs;

   c. Failing to adequately test the dual-ended Combat ArmsTM earplugs;

   d. Failing to adequately market the dual-ended Combat ArmsTM earplugs;

   e. Failing to adequately instruct users in using the dual-ended Combat ArmsTM earplugs;

   f. Failing to recall the dual-ended Combat ArmsTM earplugs or, alternatively, to warn consumers of a known danger/defect in the dual-ended Combat ArmsTM earplugs;

    g. Failing to disclose post-sale information known about dangers or defects in the dual-ended Combat ArmsTM earplugs;

    h. Concealing known dangers associated with the dual-ended Combat ArmsTM earplugs; and

    i. Failing to meet or exceed internal corporate guidelines.

### F. GROSS NEGLIGENCE.

43. Plaintiff makes a claim for punitive damages pursuant to the Texas Constitution; therefore, Plaintiff will not be prohibited from introducing evidence of actual damages. Plaintiff seeks punitive damages for the gross negligence and/or malicious conduct of Defendant which was a proximate cause of the failure of the dual-ended Combat ArmsTM earplugs and of Plaintiff's injuries and damages.

44. Specifically, Defendant's conduct, when viewed objectively from Defendant's standpoint at the time it occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

45. Furthermore, Defendant had actual, subjective awareness of the risk(s) but proceeded with a conscious indifference to the rights, safety or welfare of others.

### G. EXEMPLARY DAMAGES

46. Because Defendant is liable for gross negligence, punitive damages should be assessed against it as a deterrent to such future bad conduct and as a punishment for its bad acts in an amount to be determined by the jury.

## VII.

## **COMPLIANCE WITH GOVERNMENT STANDARDS AND A GOVERNMENT CONTRACTOR DEFENSE IS NOT APPLICABLE**

47. There were no mandatory federal safety standards or regulations applicable to this product which anticipated or were adequate to protect the public or individual users from the unreasonable risks of injury or damage from the ordinary and expected use of the of the subject dual-ended Combat ArmsTM earplugs.

48. Defendant before and after marketing the subject dual-ended Combat ArmsTM earplugs withheld or misrepresented information and relevant material, as detailed above, to the federal government's or agency's determination of adequacy of the safety standards or regulations at issue in this action.

49. To the extent Defendant attempts, pursuant to § 82.008 of the Texas Civil Practice & Remedies Code, to rely on any standards or regulations of the federal government, such standards or regulations were inadequate to protect against the risk or accident and/or injuries that occurred in this accident and/or Defendant withheld or misrepresented information to the government regarding the adequacy of the safety standard at issue.

50. The Fifth Circuit has held that "[l]iability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Bynum v. FMC Corp.*, 770 F.2d 556 (5th Cir. 1985) (citing *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988)).

51. The Fifth Circuit has further held that "[t]he government contractor defense does not necessarily apply only to claims labeled 'design defect.' Whether the government contractor defense applies to a particular claim depends only upon whether *Boyle's* three conditions are met with respect to the particular product feature upon which the claim is based." *Bailey v. McDonnell Douglas Corp.*, 989 F.2d 794 at 801-02 (5th Cir. 1993).

52. Here, the government contractor defense is inapplicable because the feature of the product claimed by Plaintiff to be defective—namely, the stem of the dual-ended Combat ArmsTM earplugs that is too short to provide adequate noise reduction for users—was not manufactured, designed, marketed, or sold in accordance with reasonably precise specifications approved by the United States, therefore not allowing the equipment to conform to such specifications. Further, and most egregiously, instead of warning the United States about the dangers in the use of the equipment it knew about, 3M instead manipulated its testing and marketing so as to conceal such dangers from the United States and from servicemembers, such as Plaintiff, who would ultimately use the product.

53. Accordingly, Defendant 3M Company will be held liable under Texas law.

## VIII.

## DAMAGES

54. Plaintiff as a result of the incident seeks compensation for the following damages:

   a. The amount of reasonable medical expenses necessarily incurred in the past, and those that will reasonably be incurred in the future;

   b. Past and future physical pain and suffering of Plaintiff;

   c. Past and future physical disfigurement suffered by Plaintiff;

   d. Past and future physical impairment suffered by Plaintiff;

e. Past and future mental anguish of Plaintiff;

f. Past loss of wages and loss of future earning capacity of Plaintiff;

g. Cost of suit;

h. Exemplary damages; and

i. Any and all other damages in which Plaintiff may be justly entitled.

## IX.

## **PRAYER**

55. For the foregoing reasons, Plaintiff prays that the Defendant be cited to appear and answer herein. Upon final trial by a jury, which is hereby demanded, Plaintiff is entitled to have judgment against Defendant and requests that the Court award money damages as listed above, in such amounts that the jury may deem appropriate and are allowable by law, along with any and all other relief the Court may deem appropriate.

Respectfully Submitted,
**MARTZELL, BICKFORD & CENTOLA**

_/s/ Scott R. Bickford_

SCOTT R. BICKFORD (TX 02295200)
338 Lafayette Street
New Orleans, Louisiana 70130
(504) 581-9065
(504) 581-7635 (Fax)
srb@mbfirm.com; usdcedtx@mbfirm.com

Jeffrey P. Berniard (#29088)
Berniard Law Firm, L.L.C.
7513 Hampson St.
New Orleans, LA 70118
Telephone: (504) 527-6225
Facsimile: (504) 617-6300
Email: Jeff@GetJeff.Com
PRO HAC VICE MOTION TO BE FILED

**COUNSEL FOR PLAINTIFFS**